# CHARLESTON.

KANAWHA HARDWOOD CO. *v.* EVANS.

Submitted March 3, 1908.   Decided May 4, 1909.

1.  EQUITY—*Bill of Review.*

A person interested in the subject matter of a bill in equity and a decree thereon, but not made a party thereto, may, after final decree therein, file an original bill in the nature of a bill of review, for correction of any adjudication therein to his prejudice and vindication of his rights in the premises and have it treated as a cross-bill in the original cause. (p. 625.)

2.  SAME.

Under its power of restitution, the court may make, in such case, any decree or order between the parties to the first bill, if made parties to the second, that may be necessary to the effectuation of equity and justice between them, whether there be specific prayers for such relief or not, it being based upon errors appearing in the record. (p. 625.)

3.  PARTNERSHIP—*Sale by Partner—Interest Transferred.*

An assignment, sale or transfer of the right, title and interest of a partner in and to partnership property passes only the title of the individual partner, not that of the firm. (p. 625.)

4.  SAME—*Sale by Partner—Interest Transferred.*

If a co-partnership extend only to certain property, and one of the members of the firm, having property of his own of the same kind, receive advances of money on account of his own property and his interest in the social property, the person, making such advances, is a creditor of the inidvidual, but not of the firm. (p. 626.)

5.  SAME—*Rights and Liabilities as to Third Persons—Estoppel.*

If, in such case, the person, making advances, knows the other member of the firm has an interest in part of the property, the latter is not estopped from asserting his rights in respect thereto. (p. 627.)

Appeal from Circuit Court, Clay County.

65 W. Va.

The Kanawha Hardwood Company tendered its petition in a suit by Noah Evans against J. H. Perrine praying to be made a defendant and to have its petition taken as a cross-bill against Evans, Perrine, and others. Decree for the Kanawha Hardwood Company, and Evans and another appeal.

*Reversed and Remanded.*

H. B. DAVENPORT and McWHORTER & LOEWENSTEIN, for appellants.

LINN & BYRNE, for appellee.

POFFENBARGER, JUDGE:

J. H. Perrine, engaged in the manufacture of lumber and owning a saw-mill and tramway, in Clay county, entered into a contract of co-partnership with Noah Evans, the owner of timber on two tracts of land, containing in the aggregate about 100 acres, on the 23rd day of January, 1900. Evans' timber and Perrine's mill and tramway were to be used without charge in the common enterprise and they were to bestow their care and labor upon it and contribute equally to expenses, and share equally in profits and losses. Prior to the date of this contract, Perrine had been financed in his timber operations by the Kanawha Hardwood Co., a co-partnership to whom he had furnished, on account of the advancements, considerable quantities of lumber. Their relations had been established by a contract, dated August 11, 1899, purporting a sale by Perrine to said company of the lumber he then expected to cut, estimated at 100,000 feet, at certain prices therefor, delivered on board cars. At the date of execution of the contract, $500.00 was advanced on the lumber. On February 21, 1900, the company had advanced and paid Perrine $3,391.23 and credited him with $2,064.07, leaving a balance due of $1,329.16, according to the testimony of J. Q. Barker, manager of the company. On that date, which was about a month after the formation of the partnership between Perrine and Evans, Barker went to Perrine's place of business to look after the company's interests and, finding Perrine embarrassed by lack of funds, made a new contract, dated February 22, 1900, by which his company agreed to make further advancements, and purchased the mill, tramway and all of Perrine's "right, title and interest in and to the lumber" then on

sticks; his "interest in and to" the timber already purchased; his rights of way; and his "right and title" to mill and lumber yards wherever located on Queen Shoals Creek; but there was a provision for re-conveyance in case Perrine should pay back the money advanced to him. Future advances were provided for not to exceed $9.00 per thousand feet for purchasing timber, cutting, hauling, sawing and loading on cars. Of course, shipments were to continue and the lumber, as received, was to be credited on the indebtedness. Evans was not expressly made a party to this contract, though interested as aforesaid. Barker says the company advanced $1,200.00 to Perrine on the next day, paid a freight bill of $32.17 on the 24th and his note at a certain bank for $258.20 on the 26th. While matters were in this situation, C. C. Young, a creditor of Perrine, sued him in *assumpsit* for the sum of $354.15, and had an attachment levied on the lumber and timber about the mill and on the yards, by D. H. Stephenson, a deputy sheriff, and it was subsequently sold under an order of the court, pending the suit, for the sum of $529.01, the Kanawha Hardwood Company becoming the purchaser, retaining the money and giving the sheriff its obligation, with the intention of resisting Young's claim to the fund on the ground of title to the property in the purchaser. Part of the property sold under the attachment belonged to Perrine and the residue to Perrine and Evans, the former bringing $150.67 and the latter $378.34. Later, the attachment was quashed. In July, 1900, Evans brought his suit in equity, setting up the co-partnership between himself and Perrine, and the proceedings in the action at law, resulting in the conversion of the social property into a fund in the hands of the sheriff, and praying a settlement and dissolution and a decree for the fund, less an amount sufficient to pay the firm debts. Such proceedings were had as resulted in a decree in his favor for $378.71, out of said fund, less the sheriff's commission thereon, $19.93. This decree was pronounced at the September term of the court, 1901. Before the expiration of that term, but after the entry of the decree, the Kanawha Hardwood Co., not having been made a party to the cause, came into court and tendered its petition, praying to be made a defendant and to have its petition taken and treated as a cross-bill against Evans, Perrine, Stephenson and Young. The court took time to consider it, but adjourned without

having acted upon it, and, at the ensuing December term, permitted it to be filed, over objections of Evans, remanding the cause to rules for process. At the May term, 1902, all the parties, except Perrine, appeared, waiving the issuance and service of process, and answers were filed by Evans and Stephenson, that of the latter showing he had paid Evans the fund in his hands arising from the sale of the partnership property, under the decree formerly made, and praying a decree against the Kanawha Hardwood Co. for $529.01, the purchase money of the property sold. On these pleadings and the evidence taken, the decree, complained of, allowing the Kanawha Hardwood Co. to retain said sum of $529.01 and requiring Evans to repay to Stephenson the money received from him, was pronounced, and Evans and Stephenson have appealed from it.

The so-called cross-bill was really an original bill, having for its object correction of a decree in a cause to which the Kanawha Hardwood Co. had not been a party, but to which it should have been made a defendant, as the object of Evans' bill had been to acquire the fund in the hands of said company. That decree was not binding on it, but it related to, and affected, the fund in its hands. Hence the new bill was germane to the old one, and may be termed an original bill in the nature of a bill of review. The decree, made on the first bill, between Evans and Stephenson, became final as to them on the adjournment of the term, and could not be set aside, but subsequent proceedings on the new bill disclosed a miscarriage of justice, due to Evans' failure to make necessary parties to his bill. Assuming that he was not entitled to that fund, the decree in his favor, so wrongfully procured by him, passed into his hands a fund under the control of the court and constructively in its possession. We think the court, seeing the erroneous and wrongful disposition of the fund, and having all the parties before it, could, under its power of restitution, decree repayment of it by Evans, though Stephenson did not ask it in his answer to the cross-bill. The decree was a mere order of restoration, based upon error, disclosed by the record, as the circuit court thought, rather than a pleading *inter partes* and prayer for relief. *August* v. *Gilmer*, 53 W. Va. 65; *Brown* v. *Cunningham*, 23 W. Va. 109; *Eubank* v. *Ralls*, 4 Leigh 308. We think this principle an-

swers fully the objection of want of pleadings between Stephenson and Evans, as a basis for the decree between them.

The form of the contract of sale, purporting to pass only Perrine's right, title and interest in and to the lumber constitutes the basis of further complaint. Of course it carried nothing beyond the extent of its terms. *Jones* v. *Neale et als,* 2 Pat. & H. 339. However, if the cross-bill plaintiff can be regarded as a creditor of the firm, in respect to the indebtedness due it, the decree is right, since the fund, constituting the social assets, is confessedly a partnership fund, as to which creditors have preference over members of the firm. The crucial question, therefore, is whether the advancements are to be regarded as having been made to Perrine or to the firm. Evans says he knows nothing of them, nor of the use of any of them in the manufacture of the partnership lumber. According to his testimony and the finding of the commissioner, on a reference, under the first bill, he paid out for labor $561.98. His deposition was taken on the issues, made under the cross-bill, to the same general effect, and no effort was made to show he had received this money from the advancements made to Perrine, or that he was not financially able to have made the payments from his own funds. He received from Perrine and sales of lumber $183.22, which may have been used in paying for labor, leaving, if it was, $378.-76, paid out of his other funds. There was unpaid indebtedness, amounting to about $125.00. Besides the work of his teams, $55.20, and the money he paid Evans, Perrine paid out $131.27. Evans furnished the timber and Perrine the use of his mill and tramway and each his services without charge. No doubt the principal part of the money received by Evans from Perrine and paid by Perrine for labor and timber came out of the advancements, made to Perrine by the cross-bill plaintiff; but the extent to which it came from that source is impossible of ascertainment. Perrine seems to have been hopelessly embarrassed when these advancements were made, and most of the money must have gone to pay his individual debts. Barker says $258.20 went to pay Perrine's individual note, and it is not likely that $1,200.00 was needed for, or used in, the partnership business within a month after that business commenced. Assuming that the cost of manufacturing and loading would be as much as $9.00 per thousand feet, these advancements were far in excess

of the entire cost of manufacturing 100,000 feet of lumber, and must necessarily have been made to cover some of Perrine's individual indebtedness. If we could say the cross-bill plaintiff is a creditor of the firm, the extent to which the debt is a firm debt has not been ascertained, and this precludes recovery on that theory. Adding to this the circumstances of a contract on the faith of which the advancements were made, looking only to Perrine's interest in the property, and, in terms, binding only that interest, and Barker's knowledge that Evans claimed an interest in portions of the lumber, it seems clear that the advancements were made to Perrine individually, and not to the firm. The circuit court seems to have been of this opinion, for, in its decree, it says Evans has estopped himself by his conduct.

We find no evidence justifying the application of the principle of estoppel. Barker says he knew or was informed that Evans had an interest in some of the lumber. That was sufficient to put him on inquiry, and there seems to have been no difficulty in ascertaining the lumber in which he had an interest, nor the extent of the interest. Evans made no false or misleading representation, nor, indeed, any at all, beyond that, arising from his having put his timber into the mill under his agreement with Perrine, and of that Barker had sufficient notice to put him upon inquiry, and seems clearly to have respected that interest in framing the contract and making the advancements.

Under the contract between Perrine and Evans, each was entitled to one-half of the net proceeds or profits of the business. That is all either could dispose of on his individual account or for his individual benefit. That profit, as shown by the commissioner's report, as well as by the evidence, was $105.25, one-half of which sum the cross-bill plaintiff is entitled to, in addition to the sum of $150.67, proceeds of individual property of Perrine's sold by the sheriff, and constituting part of said sum of $529.01. Having had all the parties before it, the court should have ascertained the costs in the attachment suit in which the sale was made, and required Young, at whose instance they were incurred, to pay the same. This should now be done and provision for restitution made, allowing interest, but the preparation of such a decree will involve investigations, ascertainment

of facts and calculations that can be more easily and expeditiously made in the court below.

For the reasons stated, the decree complained of will be reversed, with costs to the appellant Evans, and the cause remanded.

*Reversed and Remanded.*